IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13CV83-MU

PENNSYLVANIA WOOD, INC.,            )
                                    )
    Plaintiff,                      )
                                    )
vs.                                 )   ORDER
                                    )
ANDREW G. MARTIN, D/B/A MT LEASING, )
                                    )
    Defendants.                     )
                                    )

This matter is before the court upon Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

Plaintiff Pennsylvania Wood, Inc. is a North Carolina furniture designer and seller. Defendant Andrew G. Martin is a resident of the state of Indiana. Plaintiff alleges claims arising out of a lease agreement with Defendant. These claims include breach of contract and civil conversion.

**FACTUAL BACKGROUND**

Plaintiff sells high-end, hand-made furniture to its customers from its showroom in Charlotte, North Carolina. Plaintiff utilized the services of craftsmen in Indiana to build and finish its furniture. Once the furniture was built, it was delivered to Elvin Nolt, a master craftsman of Elkhart, Indiana, to have the proper finish applied to its exterior. In or around October 2008, Nolt discussed the possibility of Plaintiff moving its finished and unfinished furniture from its Charlotte facility to a location near his shop in Elkhart, Indiana in order to reduce Plaintiff's rent and production costs. Toward the end of 2008, Nolt suggested the use of Defendant's warehouse which was located near Nolt's shop in Elkart. Nolt made positive

1

representations about the quality of the warehouse and Defendant's character. On the strength of Nolt's representations, Plaintiff agreed, sight unseen, to lease the warehouse so long as the lease terms were favorable. (Affidavit of Matthews, ¶10). Plaintiff and Defendant negotiated the lease in January 2009 via telephone and fax. In February 2009, Plaintiff signed the lease agreement in North Carolina and faxed it to Defendant in Indiana.

After Plaintiff began storing its inventory in Defendant's warehouse, a dispute arose concerning the warehouse's conditions. Plaintiff contacted Defendant to express concern over a leaky roof that was causing moisture-related damage to Plaintiff's furniture. Defendant did not address Plaintiff's concerns and Plaintiff refused to pay rent until Defendant fixed the problem. In response, Defendant allegedly unlawfully removed the majority of Plaintiff's inventory from the warehouse and sold it at a local auction house.

Defendant has moved to dismiss Plaintiff's claims for lack of personal jurisdiction. Plaintiff argues that the Court has specific personal jurisdiction over Defendant because Defendant purposefully availed himself of the privilege of conducting business in North Carolina and that Plaintiff's claims arise out of those business activities.

**DISCUSSION**

When a court relies on the complaint and affidavits alone, the plaintiff's burden is to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. *In re Celotex Corp*, 124 F.3d 619, 628 (4th Cir. 1997). The exercise of personal jurisdiction must comport with Fourteenth Amendment due process requirements. *Christian Sci. Bd. Of Dirs. Of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). North Carolina's long-arm statute applies to nonresident defendants to the extent permitted by the Fourteenth Amendment Due Process Clause. Therefore, the jurisdictional inquiry becomes

whether Defendant has such minimum contacts with the forum state that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.*

There are two forms of personal jurisdiction: general and specific. A court exercises general personal jurisdiction over a defendant when the suit does not arise out of the defendant's contacts with the forum state. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, n. 9 (1984). A court exercises specific personal jurisdiction over a defendant when the suit arises out of the defendant's contacts with the forum state. *Id.* at 414, n.8. Here, the only jurisdictional issue is whether the Court has specific personal jurisdiction over Defendant.

The Fourth Circuit has synthesized the due process requirements for asserting specific personal jurisdiction into a three-part test which concerns, "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; (3) and whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th. Cir. 2009). The Court only needs to consider prongs two and three if the first prong is met. *Id.*

The first prong of the *Consulting* test articulates the minimum contacts requirement of constitutional due process. *Id.* "The mere unilateral activity of those claiming some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). The aim of the minimum contacts requirement is that a nonresident defendant's conduct is such that he should reasonably anticipate being haled into the courts of the forum state. *Id* at 297.

Courts have considered various nonexclusive factors to resolve whether a defendant purposefully availed itself of the privilege of conducting activities in the forum state. *Id.* These

factors include, but are not limited to: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. *Consulting*, 561 F.3d at 278.

> Plaintiff does not dispute the following assertions by Defendant:
>
> "Defendant does not maintain offices or agents in North Carolina, does not own property in North Carolina and did not make in-person contact with [Plaintiff] in North Carolina regarding the lease agreement. In addition, the parties' lease agreement does not provide for North Carolina law to govern disputes and does not require either [Plaintiff] or [Defendant] to perform any duties in North Carolina. Therefore factors One, Two, Five, Six, and Eight clearly weigh in [Defendant's] favor." [Doc. No. 13 at 6].

Therefore, Plaintiff's argument that Defendant purposefully availed himself of the privilege of conducting business activities in North Carolina centers around factors three, four, and seven.

Factor three of the *Consulting* test involves the initiation or solicitation of the business relationship by a nonresident defendant. As the record indicates, Nolt initiated and solicited the business relationship between Plaintiff and Defendant. Nolt suggested that Plaintiff relocate its inventory near Elkhart, Indiana. Nolt suggested the use of Defendant's warehouse and made positive representations concerning its quality and Defendant's character. It was *on the strength of Nolt's representations concerning Defendant's warehouse* that Plaintiff agreed, sight unseen, to lease the warehouse. [Doc. No. 12 at 4]. There has been no satisfactory showing that Nolt

4

acted as an agent of Defendant in this transaction, so his actions cannot be deemed those of Defendant. Thus, as far as Defendant's activities are concerned, Plaintiff unilaterally chose to lease the warehouse. The most Defendant did was negotiate the lease terms *after* Plaintiff already agreed to the business prospect. Therefore, Defendant did not reach into North Carolina to initiate or solicit the business relationship with Plaintiff. Accordingly, Plaintiff's agreement to lease Defendant's warehouse does not establish a contact with North Carolina and factor three favors Defendant.

Factor four involves the significant or long-term business activity of a nonresident defendant. The Fourth Circuit has held that "[a] contract with a resident of a forum state does not automatically constitute sufficient contacts to support the forum's assertion of specific jurisdiction, even where the dispute arises from the contract." *Le Bleu Corp. v. Standard Capital Group, Inc.*, No. 00-2392, 2001 WL 672066 *2 (4th Cir. June 15, 2001). Rather, the contract's prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' course of dealing must evidence a substantial connection between the contract and the forum in order for personal jurisdiction to properly lie. *CEM Corp. v. Personal Chemistry AB*, 192 F.Supp.2d 438, 442 (W.D.N.C. 2002) (referencing *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

Regarding the lease negotiations in the case at bar, *CEM* is instructive. In *CEM* this court held that "the fact that the defendant travelled to North Carolina to negotiate the contract and made several telephone calls and faxes to North Carolina during negotiations does not create specific jurisdiction in the absence of a contract substantially connected to North Carolina." *Id.* at 442. Here, Defendant's negotiations are even more attenuated than the defendant's in *CEM* because Defendant never travelled to North Carolina for negotiations. Accordingly, Defendant's

5

lease negotiations do not evidence a substantial connection between the lease and North Carolina. Therefore, the lease and the negotiations surrounding it do not justify the exercise of specific personal jurisdiction.

Regarding the lease's contemplated future consequences, *Burger King Corp. v. Rudzewicz* is instructive. 471 U.S. 462 (1985). In *Burger King* the Supreme Court reasoned that, in light of the contract's terms, the franchisee's breach of the contract caused foreseeable injuries to the Burger King corporation in Florida such that the franchisee could reasonably anticipate being haled into court there. *Id.* at 480. The contract emphasized that all Burger King operations were conducted and supervised from Florida, that all relevant notices and payments were to be sent there, and that the agreements were made in and enforced from Florida. Also, the contract contained a Florida choice of law provision. *Id.* at 481. In light of these terms, the Court concluded that the franchisee purposefully availed himself of the benefits and protections of Florida's laws by entering into contracts expressly providing that those laws would govern franchise disputes. *Id.* at 482. Unlike the contract in *Burger King*, this lease has no terms evidencing a substantial connection with North Carolina. This lease does not require either party to perform duties in North Carolina. Nor is this lease to be enforced from North Carolina. Also, this lease has no North Carolina choice of law provision. The lease's future contemplated consequences do not justify the exercise of specific personal jurisdiction.

Though the lease contract itself does not automatically establish sufficient minimum contacts to warrant jurisdiction, the size of the contract is relevant in determining whether a nonresident defendant's actions toward a plaintiff's home-state establish personal jurisdiction. *Hanes Co., Inc. v. Galvin Bros., Inc.*, No. 1:09CV918, 2013 WL 594013, at *10 (M.D.N.C. Feb. 15, 2013). Here, the lease agreement between the parties provided for rent of $600.00 per month

6

and was for a one-year term. This equates to rental payments by Defendant totaling only $7,200.00 per year. This is a relatively small sum for a commercial lease agreement. Therefore, the size of the lease agreement does not justify the exercise of specific personal jurisdiction. Factor four weighs in Defendant's favor.

Factor seven involves communications between a plaintiff and a nonresident defendant. Since the communications between Plaintiff and Defendant were lease negotiations, these communications cannot constitute minimum contacts for the reasons discussed above. Thus, factor seven weighs in Defendant's favor.

Plaintiff also relies heavily on the case of *English & Smith*, 901 F.2d 36 (4th Cir. 1990). in support of its argument that this Court has specific personal jurisdiction over Defendant. In *English & Smith* the Fourth Circuit held that the exercise of specific personal jurisdiction over a nonresident defendant did not violate due process. *English & Smith* concerned a dispute over a shared contingency fee contract between a California attorney (defendant) and a Virginia law firm (plaintiff). 901 F.2d at 37-38. The defendant hired one of plaintiff's attorneys to work on a case. *Id.* Both the defendant and the plaintiff's attorney performed their work in their respective states and neither party travelled to the other state, communicating entirely by phone and letters. *Id.* The court reasoned that the defendant purposefully directed his activities toward Virginia by initiating the relationship with the plaintiff, entering into contracts with the defendant's attorney by virtue of action taken in Virginia, and carrying on a continuing relationship with the defendant's attorney while the two worked on the case.

However, unlike the contract in *English & Smith*, the lease contract herein was performed in Indiana by Plaintiff since Plaintiff's rent payments were tendered in Indiana, not in North Carolina. Also, unlike the defendant in *English & Smith*, the Defendant in this case did not

initiate the business relationship with Plaintiff. Rather, the lease contract arose because of the unilateral activity of Plaintiff. Therefore, *English & Smith* is easily distinguishable from the case at bar.

Because all the Fourth Circuit *Consulting* factors weigh in Defendant's favor and Plaintiff has not otherwise established minimum contacts by Defendant with North Carolina, the Court need not reach prongs two and three of the *Consulting* test for specific personal jurisdiction.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint is hereby GRANTED.

Signed: July 30, 2013

Graham C. Mullen
United States District Judge